**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHARLES JULIAN TAYLOR,**<br>**Plaintiff,**<br><br>**vs.**<br><br>**CONSTABLE JERRY GARCIA, in his official capacity as Harris County Constable Precinct 2; DEPUTY CHRISTOPHER BOLIN, in his individual capacity; and HARRIS COUNTY, TEXAS,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 4:26-cv-04127** |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(Jury Trial Demanded)**

---

COMES NOW **Plaintiff Charles Julian Taylor**, by and through undersigned counsel, and files this *Original Complaint* against **Defendants Constable Jerry Garcia**, in his official capacity as Constable of Harris County Precinct 2; **Deputy Christopher Bolin**, in his individual capacity; and **Harris County, Texas**, and in support thereof would respectfully show the Court as follows:

## I. INTRODUCTION

This is a Civil Rights action arising from the unlawful traffic stop, excessive force, and false arrest of Plaintiff Charles Julian Taylor, an African American male and licensed Texas Concealed Handgun License (CHL) holder, by Deputy Christopher Bolin (formerly)

of the Harris County Constable's Office, Precinct 2, on May 26, 2024, in Harris County, Texas. Deputy Bolin, without reasonable suspicion or probable cause, followed Plaintiff's vehicle for nearly six minutes before initiating a pretextual stop, forcibly removed Plaintiff from his vehicle by seizing his head and hand despite Plaintiff's full cooperation and explicit statement of non-resistance, and arrested Plaintiff for alleged unlawful carrying of a weapon despite Plaintiff being a licensed carrier who had voluntarily disclosed his firearm. The criminal charges were dismissed. Plaintiff's firearm was ordered returned.

Deputy Bolin's conduct toward Plaintiff was not an isolated incident. Prior to his employment with Constable Precinct 2, Bolin served as a deputy with the Harris County Sheriff's Office (HCSO), where he accumulated a nearly 50-page disciplinary file spanning seven years, including sustained findings of excessive force, fabricated traffic stop justifications, unauthorized arrests, and racially motivated enforcement against African American men.

HCSO terminated Bolin in late 2023 and designated him "Not Eligible for Rehire." Within approximately one week of that termination, Constable Garcia hired Bolin as a deputy constable for Precinct 2 — without, it appears, conducting the mandatory pre-employment background review required by Texas Occupations Code § 1701.451.

Approximately five to six months later, Bolin subjected Plaintiff Taylor to the same pattern of unconstitutional conduct that had ended his HCSO career.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and applicable Texas law, seeking compensatory damages, punitive damages, injunctive relief, and attorney's fees

for the violations of his constitutional rights.

## II. JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Harris County, Texas, within the Southern District of Texas, Houston Division.

## III. PARTIES

4. Plaintiff Charles Julian Taylor is an African American male, adult individual residing in Harris County, Texas. He is a lawful gun owner and holder of a valid Texas Concealed Handgun License (CHL).

5. Defendant Christopher Bolin ("Deputy Bolin" or "Bolin") was, at all times relevant herein, a duly employed deputy constable with the Harris County Constable's Office, Precinct 2, acting under color of state law and within the scope of his employment. He is sued in his individual capacity only.

6. Defendant Jerry Garcia ("Constable Garcia") is, and was at all times relevant herein, the duly elected Constable of Harris County Precinct 2, first elected in November 2020 and re-elected in November 2024. As the elected constable, Constable Garcia is the final policymaker for Precinct 2 with respect to the hiring, screening, training,

supervision, discipline, and retention of deputy constables, including the decision to hire Deputy Bolin. He is sued in his official capacity. A suit against Constable Garcia in his official capacity is the functional equivalent of a suit against the office of Constable Precinct 2, Harris County, Texas. Constable Garcia may be served at the Precinct 2 main office, 101 S. Richey Street, Suite C, Pasadena, Texas 77506.

7. Defendant Harris County, Texas is a political subdivision of the State of Texas. Harris County funds the operations of Constable Precinct 2 and sets the budgetary and administrative framework within which the constable operates. Harris County is named as a defendant because, as the governmental entity that funds the constable's office, it may be held liable for constitutional violations arising from the official policies or widespread customs of the constable's office, and for Harris County's own role in the framework governing law enforcement hiring under Texas Occupations Code § 1701.451. Harris County may be served through the Harris County Judge or County Clerk.

## IV. FACTUAL ALLEGATIONS

### *A. Deputy Bolin's Employment at the Harris County Sheriff's Office (HCSO): 2016–2023*

9. Prior to his employment with Constable Precinct 2, Christopher Bolin was employed as a deputy with the Harris County Sheriff's Office ("HCSO"), where he served for approximately seven years. HCSO's nearly 50-page personnel file on Bolin documents a pattern of escalating misconduct beginning in 2018.

10. Over the course of his tenure at HCSO, Deputy Bolin compiled an extensive and documented disciplinary record, including the following sustained violations:

a. June 29, 2018 — *Letter of Reprimand* for driving recklessly and causing an accident.

b. July 27, 2018 — *Letter of Reprimand* for failing to complete an accident report in a timely manner.

c. August 24, 2018 — *3-Day Suspension without pay* (IAD Case No. IA2018-00204) for allowing a detainee to escape from custody and failing to immediately notify his supervisor.

d. September 18, 2018 — *Letter of Reprimand* for failing to initiate sirens while on a pursuit.

e. November 22, 2022 — *Letter of Reprimand* for failing to properly renew his extra employment permit.

f. April 4, 2023 — *Letter of Reprimand* for attempting to force a motorcycle to stop in a dangerous manner.

g. April 4, 2023 — *Letter of Reprimand* for failing to notify dispatch of a pursuit.

h. April 4, 2023 — *Letter of Reprimand* for attempting to force a dirt bike to stop in a dangerous manner.

11. On December 8, 2023, HCSO issued a *Personnel Order* imposing a *24-Hour Suspension without Pay and 180-Day Probation on Bolin* (IAD Case No. IA2022-00323). The investigation found that on June 7, 2022, Bolin made an unauthorized instanter arrest of Dalton Lanier for a Class C Misdemeanor traffic violation without supervisor authorization. Bolin opened the driver's door, handcuffed the driver's

wrist, forcibly removed him from the vehicle without explaining the reason for the stop, pushed him against the car, and had the vehicle towed — conduct that closely mirrors his treatment of Plaintiff Taylor. The *Personnel Order* expressly warned Bolin that further violations could result in termination.

12. On April 6, 2023, Bolin conducted a traffic stop of Seth Palumbo and Kristopher Willis Jr., both young Black, male, Langham Creek High School seniors. According to HCSO's subsequent Internal Affairs investigation (IAD Case No. IA2023-00215), Bolin: (a) made a false allegation that he stopped Palumbo for making an unsafe turn, contradicted by video evidence; (b) forcibly removed Palumbo from the vehicle, slamming him to the ground; and (c) failed to provide or offer medical attention to Palumbo following the use of force — a pattern nearly identical to his conduct toward Plaintiff Taylor.

13. On November 17, 2023, HCSO's Administrative Disciplinary Committee (ADC) issued a *Notice of ADC Recommendation* finding that the violations in IAD Case No. IA2023-00215 were sustained and recommending termination. Following a Loudermill meeting on December 20, 2023, HCSO upheld the termination and designated Bolin "*Not Eligible for Rehire*" in his permanent personnel file.

14. Bolin's pattern of misconduct at HCSO disproportionately targeted African American men. Bolin was accused of assaulting Alexander Williams, an African American man, on May 10, 2022, at a convenience store parking lot while Williams's three-year-old son was present. Bolin grabbed Williams by the wrist, slammed him against his car, threw him to the ground while handcuffed, and struck

him with closed fists inside the patrol vehicle. Williams was arrested and held until May 18, 2022; all charges were dismissed at arraignment for no probable cause. Williams filed a civil rights lawsuit: *Williams v. Bolin, et al.*, Civil Action No. 4:23-cv-00302 (S.D. Tex., filed Jan. 27, 2023), still pending. In that case, the Honorable Lee Rosenthal held that punching a handcuffed person who had committed at most a minor traffic violation constituted clearly established excessive force such that qualified immunity could not be resolved without discovery. *Williams v. Bolin*, 694 F. Supp. 3d 904 (S.D. Tex. 2023).

15. On January 11, 2023, Bolin assaulted Rico McCoy, an African American man, following a traffic stop. Bolin allegedly followed McCoy; McCoy not feeling comfortable about the cruiser following him, pulled into a nearby Fire Department parking lot. Bolin forced McCoy from his vehicle, and delivered at least seven closed-fist punches to McCoy's face and head while McCoy was restrained, causing broken teeth and a detached retina. McCoy's criminal charges were dismissed.

16. McCoy filed suit: *McCoy v. Bolin, et al.*, Civil Action No. 4:25-cv-00135 (S.D. Tex., filed Jan. 11, 2025), still pending. In the *McCoy* matter, Judge Charles Eskridge adopted the Magistrate's Recommendation on March 16, 2026, sustaining McCoy's excessive force and First Amendment retaliation claims against Bolin individually.

17. At all relevant times, Bolin was also the subject of at least three active internal affairs investigations at HCSO simultaneously (IA#2022-00530, IA#2023-00215, and IA#2023-00334), further underscoring the scope and persistence of his

unconstitutional conduct.

### *B. Bolin's Hiring by Constable Precinct 2 — Within One Week of Termination*

18. Texas Commission on Law Enforcement (TCOLE) records confirm that within approximately two weeks of Bolin's termination from HCSO becoming final, he appeared on the Harris County Constable Precinct 2 pay list as a sworn deputy constable, hired by Constable Garcia.

19. Texas Occupations Code § 1701.451 imposes a mandatory pre-employment duty on every Texas law enforcement agency before hiring any licensed peace officer. That statute required Constable Garcia, before hiring Bolin, to: (a) obtain Bolin's written consent to review his prior records; (b) request and review his full personnel file and employee records from HCSO; (c) obtain and review HCSO's employment termination report and any misconduct investigation reports on file with TCOLE; and (d) submit to TCOLE a certification confirming compliance. HCSO's own policies confirm that a hiring law enforcement agency is entitled to view the contents of a departing officer's full personnel file under § 1701.451 and that HCSO will provide it upon request.

20. Despite this statutory obligation, Precinct 2 subsequently claimed that some of Bolin's records were not available at the time of hiring. Constable Garcia's Chief, Mike Kritzler, later publicly stated that Bolin would not have been hirable had they known about his full past. Either Constable Garcia failed to comply with his mandatory pre-employment review obligations under § 1701.451 — or he reviewed the full record and hired Bolin anyway. In either case, Constable Garcia acted with

deliberate indifference to the constitutional rights of the residents of Harris County Precinct 2.

21. Bolin's misconduct had also been the subject of public television reporting by ABC13/KTRK Houston in April 2023, which aired footage of the Palumbo arrest. A basic internet search of Bolin's name at the time of his application would have disclosed both that reporting and the pending *Williams* civil rights lawsuit. Neither a § 1701.451 review nor a routine internet search was apparently conducted before Bolin was placed on patrol.

### *C. Bolin's Conduct at Constable Precinct 2 and Subsequent Events*

22. Notwithstanding his termination, "*Not Eligible for Rehire*" designation, and publicly documented history of misconduct, Bolin served as a deputy constable with Constable Precinct 2 from approximately January 2024 through February 18, 2025.

23. On or about May 26, 2024 — approximately five months after Bolin was hired by Constable Garcia — Bolin subjected Plaintiff Taylor to the unlawful stop, seizure, excessive force, and false arrest described below.

24. On January 30, 2025, ABC13/KTRK Houston aired an investigative report disclosing the *Williams* and *McCoy* lawsuits. At the time of that report, Bolin remained on active patrol duty with Constable Precinct 2. On or about February 22, 2025, ABC13/KTRK published a full investigative report detailing Bolin's complete HCSO employment record, the "Not Eligible for Rehire" designation, and the circumstances of his hiring by Precinct 2. Constable Garcia placed Bolin on desk duty following that report. Bolin resigned on or about February 18, 2025, in lieu of

termination — his second forced separation from a Harris County law enforcement agency for cause.

25. In April 2025, Seth Palumbo and Kristopher Willis Jr. filed a Civil Rights lawsuit that was removed to federal court: *Willis and Palumbo v. Bolin, et al.*, Civil Action No. 4:25-cv-02140 (S.D. Tex.), with a *Second Amended Complaint*, Dkt. 34, filed August 22, 2025, subsequent Defendants' *Motions to Dismiss*, Dkt. 39 and 41, and Bolin's Answer, Dkt. 38, all pending.

***D. The Traffic Stop of Plaintiff Taylor — May 26, 2024***

26. On May 26, 2024, at approximately 3:00 PM, Plaintiff Charles Julian Taylor, an African American male, was operating his motor vehicle southbound on the I-45 feeder road near the Monroe exit in Harris County, Texas.

27. Plaintiff stopped at America's Best Value Hotel to drop off a passenger. Before re-entering the roadway, Plaintiff checked both directions and lawfully pulled out.

28. After Plaintiff re-entered the roadway, Deputy Bolin, who had been parked in the vicinity, began following Plaintiff's vehicle. Plaintiff had committed no traffic infraction.

29. Plaintiff used his turn signal to change lanes on the feeder road and, upon merging onto I-45 Southbound, again used his signal at every subsequent lane change in full compliance with applicable traffic laws. Deputy Bolin mirrored each lane change. This pattern continued from the I-45/Airport exit to the I-45/Beltway 8 interchange — approximately five to six minutes.

30. Plaintiff eventually reduced his speed; Deputy Bolin pulled alongside, made eye contact, then abruptly braked and activated his emergency lights, effectuating a traffic stop without legal justification.

### *E. The Encounter at the Vehicle*

31. Plaintiff promptly and cooperatively pulled over. Deputy Bolin approached and requested license and registration. His demeanor was rude and aggressive from the outset.

32. Plaintiff immediately provided both his Texas Driver's License and his valid Texas CHL, giving Deputy Bolin notice that Plaintiff was a lawful, licensed carrier of a concealed firearm.

33. Deputy Bolin told Plaintiff to hold on and returned to his patrol vehicle without explaining the reason for the stop. Upon returning, Bolin asked where Plaintiff's firearm was located. Plaintiff truthfully replied it was under the driver's seat and offered to retrieve it. Bolin responded, "No, just chill for right now," and returned to his patrol car.

34. At no time did Plaintiff act in a threatening manner, make any furtive movements, or disobey any lawful order.

### *F. The Unlawful Seizure and Use of Force*

35. When Deputy Bolin returned a third time, he instructed Plaintiff to open his car door. As Plaintiff fully and cooperatively complied, Bolin suddenly, without warning or legal justification, seized Plaintiff's hand and then grabbed Plaintiff's head, forcefully yanking him from the vehicle.

36. Plaintiff did not resist. He stated: "Wait, wait, wait, I'm not resisting you, but you do not have to do me like this! Officer, I have complied with everything you have asked."

37. Despite Plaintiff's full cooperation and explicit statement of non-resistance, Deputy Bolin placed Plaintiff in handcuffs. When Plaintiff asked why he had been stopped, Bolin stated, "You switched lanes with no signal" — a factually false and pretextual basis, as Plaintiff had used his turn signal at every lane change.

### *G. The Unlawful Arrest and Detention*

38. While Plaintiff was detained in the back of the patrol vehicle, he observed Deputy Bolin searching the internet for information about Texas concealed carry and holster laws, evidencing Bolin's uncertainty about the legality of Plaintiff's lawful conduct and the absence of probable cause to arrest.

39. Despite this, Bolin informed Plaintiff he was being taken to jail, alleging (a) that Plaintiff's firearm was "in plain sight" and "not in a holster," and (b) that Plaintiff had marijuana in the car. Plaintiff denied possessing any marijuana. The only substance found, if any, was an unsmokable remnant. Upon information and belief, no laboratory testing was conducted to verify the identity of any purported controlled substance.

40. Plaintiff was arrested and charged under Cause No. 251207101010, Harris County Criminal Court at Law No. 9, with Unlawful Carrying of a Weapon (Gun in Motor Vehicle), by Initiating Deputy E. Celvas. He was detained for over a day and a half before being released on a personal bond.

### *H. Dismissal of Charges*

41. On June 6, 2024, the State of Texas, through ADA Nidia Victoria Ventura, moved to dismiss the charges. The court granted the dismissal the same day. The charges were resolved without any conviction. Plaintiff's Springfield XD-9 9MM (Serial No. GM715687), which had been seized by Constable Precinct 2, was ordered returned to Plaintiff by court order dated June 24, 2024.

### *I. Damages*

42. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer: (a) physical injury from the forcible removal from his vehicle; (b) emotional distress, including symptoms consistent with Post-Traumatic Stress Disorder (PTSD) — intense fear and anxiety upon seeing police vehicles and in situations that remind him of this incident; (c) deprivation of liberty from unlawful arrest and detention exceeding one day; (d) damage to reputation and standing in the community; (e) loss of time and resources expended in defending the criminal charges, including participation in the Pretrial Diversion Program required for dismissal; and (f) such other general and special damages as may be proven at trial.

## V. <u>CAUSES OF ACTION</u>

**COUNT I – 42 U.S.C. § 1983: Unreasonable Seizure (Fourth Amendment)**
*(Against Defendant Bolin in his Individual Capacity)*

43. Plaintiff realleges and incorporates all foregoing paragraphs as if fully set forth herein.

44. At all times relevant, Deputy Bolin acted under color of state law within the scope of his employment as a deputy constable for Constable Precinct 2, Harris County, Texas.

45. The Fourth Amendment to the United States Constitution protects persons against unreasonable seizures. A traffic stop constitutes a seizure under the Fourth Amendment and must be supported, at a minimum, by reasonable articulable suspicion that a traffic law has been violated or that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1 (1968); *United States v. Cortez*, 449 U.S. 411 (1981). A warrantless arrest requires probable cause. *Beck v. Ohio*, 379 U.S. 89 (1964).

46. Deputy Bolin lacked reasonable articulable suspicion to initiate the traffic stop of Plaintiff's vehicle. Plaintiff committed no traffic violation. Before and during his merge onto I-45 Southbound, Plaintiff used his turn signal at every lane change, as required by Texas Transportation Code § 545.104. Bolin's stated reason for the stop — that Plaintiff changed lanes without signaling — was factually false and is directly contradicted by Plaintiff's own account and the observable circumstances of the stop. The stated reason was pretextual. Bolin's surveillance of Plaintiff's vehicle for approximately five to six minutes before activating his emergency lights, mirroring each lane change, further evidences the absence of any genuine traffic infraction and supports the inference that Bolin was seeking a pretext to stop Plaintiff, not responding to an observed violation.

47. Deputy Bolin lacked probable cause to arrest Plaintiff. Plaintiff is a licensed holder of a Texas Concealed Handgun License who voluntarily disclosed his firearm to Deputy Bolin at the outset of the stop by providing both his driver's license and his CHL simultaneously. Under Texas Penal Code § 46.02, the unlawful carrying statute does not apply to a person who is licensed to carry under Texas Government Code Chapter 411. Mere possession of a firearm by a licensed carrier, in the manner and location described by Plaintiff, does not constitute unlawful carrying and cannot supply probable cause for arrest.

48. The pretextual addition of alleged marijuana possession as a basis for arrest is similarly without foundation. The only substance located, if any, was an unsmokable remnant incapable of being used as a controlled substance. Upon information and belief, no field sobriety test was administered, no laboratory analysis was conducted, and no crime lab report was generated to establish the identity of any alleged controlled substance. The criminal complaint itself did not allege any quantity of marijuana sufficient to support probable cause. A charge premised on an unidentified, unquantified remnant does not establish probable cause.

49. Critically, Deputy Bolin's own conduct during the stop establishes the absence of probable cause. While Plaintiff was detained in the back of the patrol vehicle, Bolin searched the internet to determine whether a licensed CHL holder's firearm storage was criminal under Texas law. An officer who must search the internet to determine whether a crime has been committed does not have probable cause that a crime has

been committed. Bolin's internet search is an admission, in real time, that he lacked the legal foundation to arrest Plaintiff.

50. Plaintiff was arrested, transported to jail, and detained for over thirty hours before being released on a personal bond. The criminal charges were dismissed on June 6, 2024, by motion of the State of Texas. Plaintiff's firearm was ordered returned by court order. No conviction was obtained. The dismissal corroborates the absence of probable cause at the time of arrest.

51. The law prohibiting stops without reasonable suspicion and arrests without probable cause was clearly established at the time of the incident. No reasonable officer could have believed it was lawful to arrest a licensed CHL holder who voluntarily disclosed his firearm, based on a pretextual traffic infraction and an unverified remnant of an alleged controlled substance. Deputy Bolin is not entitled to qualified immunity on this count.

52. As a direct and proximate result of Deputy Bolin's unlawful stop and arrest, Plaintiff suffered: (a) deprivation of liberty for over thirty hours; (b) physical discomfort and distress from the arrest process; (c) the burden of defending against a criminal charge; (d) the requirement to complete a Pretrial Diversion Program as a condition of dismissal; (e) emotional distress, including ongoing PTSD symptoms; and (f) reputational harm. Plaintiff seeks compensatory damages, attorney's fees under 42 U.S.C. § 1988, and all other relief available under § 1983.

**COUNT II – 42 U.S.C. § 1983: Excessive Force (Fourth Amendment)**
*(Against Defendant Bolin in his Individual Capacity)*

53. Plaintiff realleges and incorporates all foregoing paragraphs.

54. The Fourth Amendment prohibits law enforcement officers from using excessive force in the course of an arrest or investigatory stop. The reasonableness of the force used is assessed by reference to the totality of the circumstances — including all events leading up to the moment force is applied, not merely the split-second in which it occurs. *Barnes v. Felix*, 605 U.S. 73, 78–79 (2025) (unanimously rejecting the Fifth Circuit's "moment of threat" doctrine and holding that the "totality of the circumstances inquiry into a use of force has no time limit");*Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The relevant *Graham* factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

55. The significance of *Barnes v. Felix* to this case cannot be overstated. Barnes itself arose from a traffic stop initiated because a driver failed to use his turn signal when changing lanes — the identical pretextual basis stated by Deputy Bolin for the stop of Plaintiff Taylor. *Barnes*, 605 U.S. at 75. In rejecting the Fifth Circuit's time-limited analysis and requiring courts to evaluate all circumstances leading up to the use of force, the Supreme Court mandated precisely the kind of contextual review that exposes the full constitutional dimension of Bolin's conduct here. This Court must consider not only the moment Bolin seized Plaintiff's person, but everything that preceded it: the pretextual stop, the absence of any traffic violation, the prolonged detention of a cooperative, licensed CHL holder, Bolin's real-time

internet search to determine whether Plaintiff had committed a crime, and the complete absence of any legal basis for the arrest that Bolin was in the process of effectuating when he applied force. That sequence does not merely fail to justify the force — it makes the force constitutionally indefensible.

56. Applying the *Graham* factors to the totality of the circumstances confronting Deputy Bolin at the time force was applied, every factor weighs conclusively against the reasonableness of his conduct:

*a.* ***Severity of the crime:*** The alleged offenses were, at most, a Class C Misdemeanor traffic infraction — changing lanes without a signal — which Plaintiff did not commit, and speculative possession of an unidentified, unquantified, unverified remnant of a controlled substance. Neither offense involves violence. Neither offense justifies physical force of any degree against a cooperative suspect.

*b.* ***Immediate threat to officer or others:*** Plaintiff posed no threat to Deputy Bolin or any other person. Plaintiff had proactively disclosed his firearm at the outset of the stop by tendering his CHL simultaneously with his driver's license. He made no movement toward the firearm during the stop. He remained in his vehicle, with hands accessible, throughout the encounter. He opened his car door when instructed. He made no threatening statements, no aggressive gestures, and took no action that a reasonable officer could have interpreted as a threat.

57. ***Active resistance or flight:*** Plaintiff was not resisting and was not attempting to flee. He was seated in his vehicle, door open, having complied with Bolin's instruction, when Bolin applied force. At the precise moment of first contact, Plaintiff explicitly and verbally declared: "I'm not resisting you." A suspect who opens his door upon instruction, remains seated, and verbally announces his non-resistance is not resisting arrest by any objective measure.

58. Despite these circumstances — minor alleged infraction, a fully cooperative and non-threatening suspect, no active resistance, and a disclosed firearm left undisturbed — Deputy Bolin, without warning or announcement, reached into the vehicle and, in rapid succession, (1) seized Plaintiff's hand, and (2) grabbed Plaintiff's head and forcibly yanked him from the vehicle. These were two distinct applications of force to two separate parts of Plaintiff's body, applied without any lawful justification, without any command to exit the vehicle immediately preceding the force, and without any threat, resistance, or provocation of any kind from Plaintiff.

59. Under the totality of circumstances required by *Barnes*, Bolin's conduct is even more clearly unreasonable when the full sequence is considered. By the time Bolin applied force, he had: followed Plaintiff for five to six minutes without a genuine traffic violation; offered a false basis for the stop; been informed Plaintiff was a licensed CHL holder; failed to research the applicable CHL law before initiating the arrest; searched the internet during the stop to determine if Plaintiff's lawful firearm storage was criminal — meaning Bolin did not even know whether a crime had

occurred when he decided to arrest Plaintiff; and nevertheless proceeded to physically extract a cooperative, explicitly non-resisting man from his vehicle. The totality of those circumstances does not present a close case. It presents an officer who had no lawful basis for the arrest he was executing and used unjustified force to effectuate it.

60. The right to be free from this conduct was clearly established at the time of the incident. In *Williams v. Bolin*, 694 F. Supp. 3d 904, 914–15 (S.D. Tex. 2023) — a case involving this same officer in this same district — the Honorable Lee Rosenthal held that it is clearly established law that the use of significant force against a person who is cooperative, non-threatening, and suspected only of a minor traffic violation violates the Fourth Amendment, and that qualified immunity cannot be resolved without discovery. That ruling is directly on point, involves the identical defendant, and bars Bolin's qualified immunity defense on this count at the pleading stage.

61. As a direct and proximate result of Bolin's use of excessive force, Plaintiff suffered: (a) physical injury, including pain and bodily harm from the forcible extraction by the head; (b) emotional distress and trauma from the sudden and violent nature of the force applied to his person; (c) symptoms consistent with Post-Traumatic Stress Disorder, including persistent anxiety, hypervigilance, and fear triggered by law enforcement contact; and (d) all other damages proven at trial. Plaintiff seeks compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all other relief available under § 1983.

**COUNT III – 42 U.S.C. § 1983: Equal Protection – Racially Selective Enforcement (Fourteenth Amendment)**
*(Against Defendant Bolin in his Individual Capacity and Constable Garcia in his Official Capacity)*

62. Plaintiff realleges and incorporates all foregoing paragraphs.

63. The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from engaging in racially selective enforcement of the law — that is, from making stops, detentions, or arrests motivated, in whole or in part, by the race of the subject. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–66 (1977). To survive dismissal, a plaintiff must plead facts plausibly supporting both (1) discriminatory effect and (2) discriminatory purpose. *Id.*

64. Plaintiff Charles Julian Taylor is an African American male. He was driving lawfully, using his turn signal, and had committed no traffic violation when Deputy Bolin initiated a surveillance tail and then a pretextual traffic stop. There was no lawful basis for any of what followed: the stop, the prolonged detention, the use of force, or the arrest. Plaintiff was compliant and cooperative throughout.

65. Discriminatory Effect: Bolin's documented pattern of stops, force, and arrests demonstrates a consistent and exclusive targeting of African American men. Every identified victim of Bolin's documented pattern of excessive force and pretextual arrest is an African American male: (a) Alexander Williams — African American male, stopped and arrested without probable cause on May 10, 2022, charges dismissed; (b) Rico McCoy — African American male, followed into a parking lot

and subjected to at least seven closed-fist punches on January 11, 2023, charges dismissed; (c) Seth Palumbo — African American male, violently removed from his vehicle on April 6, 2023, slammed to the ground, charges dismissed; and (d) Plaintiff Taylor — African American male, falsely stopped, physically extracted from his vehicle, and arrested on May 26, 2024, charges dismissed. Across all four incidents spanning more than two years and two different agencies, Bolin's conduct followed an identical pattern and every identified victim was an African American man. Plaintiff is aware of no documented incident in which Bolin subjected a non-African American person to comparable conduct.

66. Discriminatory Purpose: The inference of discriminatory purpose is supported by multiple specific facts drawn from HCSO's own records and related litigation:

a. HCSO's Internal Affairs investigation of IAD Case No. IA2022-00323 found that Bolin targeted Dalton Lanier, an African American man, at least in part because Bolin confused him with another Black man who had previously been charged with assault on a peace officer. This documented confusion of one Black man for another — and the resulting pretextual arrest — evidences the role of race in Bolin's targeting decisions.

b. Bolin's own HCSO supervisor wrote in his annual performance evaluation that Bolin's "apparent desire to put people in jail can hinder or cloud his judgement," and that "compassion and temperance are also virtues." This supervisory finding — documented in Bolin's personnel file — reflects an indiscriminate arrest

impulse that, when applied consistently and exclusively to African American men, is probative of racially motivated enforcement.

c. In *Willis and Palumbo v. Bolin*, et al., No. 4:25-cv-02140 (S.D. Tex.), the plaintiffs — also African American — allege that Bolin made remarks reflecting racial bias during the encounter and that no similarly situated non-Black individual engaging in comparable conduct would have been subjected to the same treatment.

d. Bolin's real-time internet search to determine whether Plaintiff's lawful CHL conduct was criminal — during the stop itself, after having already decided to arrest Plaintiff — demonstrates that the arrest decision was not driven by probable cause or legal knowledge, but by an impulse to incarcerate that preceded any legal analysis.

67. Plaintiff Taylor, like each prior documented victim, was engaged in entirely lawful activity, disclosed no danger, complied with all instructions, and was nonetheless physically extracted from his vehicle, handcuffed, arrested, and criminally charged. The charges were dismissed. On information and belief, Bolin's decision to surveil, stop, and arrest Plaintiff was motivated, at least in part, by Plaintiff's race.

68. Constable Garcia, in his official capacity as policymaker, is liable under this count for his deliberate indifference to the risk of racially motivated enforcement by Bolin. Bolin's HCSO personnel file — which Constable Garcia was required to obtain and review under Texas Occupations Code § 1701.451 before hiring Bolin — contained the documented pattern of enforcement against African American men described

above. Constable Garcia's failure to screen for and address this pattern, and his decision to deploy Bolin on active street patrol, constituted deliberate indifference to Plaintiff's equal protection rights.

69. As a direct and proximate result of Defendants' violation of Plaintiff's equal protection rights, Plaintiff suffered all damages described herein, including the deprivation of his constitutional right to equal treatment under the law, the indignity and stigma of a racially motivated arrest, and all other compensatory damages proven at trial. Plaintiff further seeks punitive damages against Bolin in his individual capacity, attorney's fees under 42 U.S.C. § 1988, and all other available relief.

**COUNT IV – 42 U.S.C. § 1983: Municipal Liability – Deliberate Indifference in Hiring and Failure to Train (Monell)**
*(Against Defendant Constable Garcia in his Official Capacity and Harris County)*

70. Plaintiff realleges and incorporates all foregoing paragraphs.

71. A municipality or final policymaker is liable under 42 U.S.C. § 1983 when an official policy or custom is the moving force behind a constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Liability may arise from a single decision by a final policymaker, *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997), or from a failure to train or screen that reflects deliberate indifference to the constitutional rights of those with whom officers will come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

72. Constable Jerry Garcia is the final policymaker for Constable Precinct 2 with respect to the hiring, training, supervision, and retention of deputy constables. His decisions

in these areas constitute official policy of the office and are attributable to the office for purposes of Monell liability.

***Deliberate Indifference in Hiring.***

73. Constable Garcia, as the final policymaker, made the affirmative decision to hire Christopher Bolin as a sworn peace officer within approximately one week of Bolin's termination from HCSO for cause. At the time of that hiring decision, the following information was available, documented, and obtainable:

a. Bolin had been terminated by HCSO and designated "*Not Eligible for Rehire*" in his permanent personnel file, effective December 2023;

b. Bolin's HCSO personnel file — a nearly 50-page record — contained: a termination letter finding sustained violations of excessive force, false allegations, and failure to render aid; a prior 24-hour suspension for the unauthorized forced removal of a driver from a vehicle; a prior 3-day suspension for allowing a detainee to escape; and eight Letters of Reprimand spanning 2018 to 2023, including repeated violations involving dangerous vehicle pursuits, failure to notify supervisors, and unauthorized employment;

c. HCSO had filed an employment termination report with TCOLE, which was obtainable by any hiring law enforcement agency;

d. A civil rights lawsuit arising from Bolin's conduct — *Williams v. Bolin*, No. 4:23-cv-00302 (S.D. Tex.) — was pending and a matter of public record;

e. ABC13/KTRK Houston had broadcast video footage of Bolin forcibly removing a Black teenager from a vehicle in April 2023, and this footage remained publicly accessible online; and

f. HCSO's own policies provide that a hiring agency is entitled to obtain the departing officer's complete personnel file upon request under Texas Occupations Code § 1701.451.

74. Texas Occupations Code § 1701.451 imposed a mandatory pre-employment review obligation on Constable Garcia before hiring any licensed peace officer. That statute required him to: (a) obtain written consent from Bolin to release prior employment records; (b) request and review Bolin's complete HCSO personnel file, including any IAD investigation reports; (c) obtain Bolin's TCOLE employment termination report; and (d) certify compliance to TCOLE before Bolin was placed on duty. Constable Garcia either performed this review and hired Bolin anyway — deliberate indifference — or failed to perform the review at all — which is negligence per se and equally constitutes deliberate indifference. Precinct 2's own Chief, Mike Kritzler, publicly acknowledged that Bolin "would not have been hirable" had his full record been known.

75. The causal connection between the hiring decision and Plaintiff's injuries is direct and specific. Bolin's HCSO record did not merely show general misconduct — it showed the precise pattern of conduct Plaintiff experienced: (a) pretextual and fabricated justifications for traffic stops; (b) forcible removal of cooperative, non-resisting drivers from their vehicles; (c) unauthorized arrests on charges that did not

survive prosecutorial review; and (d) racially selective enforcement against African American men. A policymaker who places a deputy with that record on active street patrol is not indifferent in the abstract — he is indifferent to the specific, documented, foreseeable risk that materialized on May 26, 2024.

***Failure to Train.***

76. Separately and independently, Constable Garcia failed to ensure that Bolin received adequate training on Texas concealed carry law and permissible uses of force during traffic stops before deploying him on patrol. The single most powerful evidence of this failure is Bolin's own conduct during the stop: while Plaintiff was handcuffed in the back of the patrol vehicle, Bolin searched the internet to determine whether a licensed CHL holder's firearm storage was unlawful under Texas law. A peace officer who must search Google during a traffic stop to determine if a CHL holder has committed a crime has not been trained on one of the most fundamental and common law enforcement scenarios in the State of Texas. This failure to train was the moving force behind the unlawful arrest of Plaintiff.

***Notice and Ratification.***

77. At minimum, Constable Garcia was on constructive notice of Bolin's pattern of constitutional violations through: (a) the *Williams* lawsuit (filed Jan. 27, 2023), which was publicly docketed and received media coverage; (b) the *McCoy* lawsuit (filed Jan. 11, 2025), which was filed six weeks before Bolin's resignation; and (c) ABC13/KTRK's January 30, 2025 investigative report, which aired while Bolin remained on active street patrol with Precinct 2.

78. Despite this constructive and actual notice, Constable Garcia took no remedial action — no additional training, no supervisory oversight, no restriction of Bolin's duties — until public media pressure in February 2025 forced Bolin's removal from the field. This inaction constitutes ratification of Bolin's unconstitutional conduct and independently supports *Monell* liability. The four civil rights suits arising from Bolin's substantially similar conduct are: *Williams v. Bolin*, No. 4:23-cv-00302 (S.D. Tex.); *McCoy v. Bolin*, No. 4:25-cv-00135 (S.D. Tex.); *Willis and Palumbo v. Bolin, et al.*, No. 4:25-cv-02140 (S.D. Tex.); and the instant action.

79. As a direct and proximate result of Constable Garcia's deliberate indifference in hiring and failing to train, Plaintiff suffered all damages described herein. Plaintiff seeks all relief available under 42 U.S.C. § 1983, including compensatory damages, injunctive relief, and attorney's fees under § 1988.

**COUNT V – 42 U.S.C. § 1983: Unlawful Detention / False Arrest (Fourth Amendment) and State Law False Imprisonment**
*(42 U.S.C. § 1983 Against All Defendants; State Law Claim Against Defendant Bolin Individually)*

80. Plaintiff realleges and incorporates all foregoing paragraphs.

81. A warrantless arrest violates the Fourth Amendment when not supported by probable cause. The existence of probable cause is determined by reference to the totality of the circumstances known to the officer at the moment of arrest. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A subsequent dismissal of criminal charges is relevant, though not determinative, of whether probable cause existed at the time of arrest.

82. Deputy Bolin caused Plaintiff to be arrested and held in custody without probable cause, in violation of the Fourth Amendment. Neither of the two stated bases for the arrest withstands scrutiny:

a. *Failure to signal:* The assertion that Plaintiff changed lanes without signaling was false. Plaintiff used his turn signal at every lane change before and during the stop. This stated basis was pretextual and fabricated, and it evaporated the moment Bolin offered it.

b. *Unlawful carrying of a weapon:* Under Texas Penal Code § 46.02, the unlawful carrying statute does not apply to a person licensed to carry under Texas Government Code Chapter 411. Plaintiff provided his CHL at the outset of the stop. There was no probable cause that Plaintiff was unlawfully carrying a weapon. Bolin's own real-time internet search to investigate the legality of Plaintiff's firearm storage — conducted after the arrest decision had already been made — confirms that he did not have the requisite legal knowledge or factual predicate to support probable cause for this charge.

c. *Possession of marijuana:* The only substance located was described as an unsmokable remnant. No laboratory analysis was performed. No quantity was weighed or measured. The criminal complaint alleged no specific quantity. An unidentified, unverified, unquantified remnant does not establish probable cause for a drug possession offense.

83. The State of Texas dismissed the criminal charges on June 6, 2024, by motion filed by the District Attorney's Office. The dismissal corroborates the absence of

probable cause. Plaintiff was detained for over thirty hours as a direct result of Bolin's unlawful arrest.

84. Constable Garcia is liable under § 1983 in his official capacity as the policymaker whose deliberate indifference in hiring and training Bolin was the moving force behind the unlawful arrest. Harris County is named to the extent its own policies or customs contributed to the constitutional violation.

**COUNT VI – State Law Claim – False Imprisonment**
*(Against Bolin Individually)*

85. Plaintiff realleges and incorporates all foregoing paragraphs.

86. Plaintiff separately asserts a Texas common law false imprisonment claim against Deputy Bolin in his individual capacity. Under Texas law, false imprisonment requires: (1) willful detention of the plaintiff; (2) without consent; and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Each element is satisfied: Bolin willfully handcuffed and transported Plaintiff to jail; Plaintiff did not consent to the detention and verbally objected; and no lawful authority existed for the arrest, as demonstrated by the dismissal of all charges.

87. This state law claim is asserted only against Bolin in his individual capacity. It is not asserted against Constable Garcia in his official capacity or Harris County, as the Texas Tort Claims Act does not waive governmental immunity for intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057(2).

88. As a direct and proximate result of the unlawful arrest and detention, Plaintiff suffered: deprivation of liberty for over thirty hours; the cost and burden of criminal defense; the obligation to complete a Pretrial Diversion Program; physical discomfort and the indignity of incarceration; emotional distress; reputational harm; and all other damages proven at trial.

**COUNT VI – Assault and Battery (Texas Common Law)**
*(Against Defendant Bolin in his Individual Capacity)*

89. Plaintiff realleges and incorporates all foregoing paragraphs.

90. Under Texas law, a civil assault occurs when a person intentionally or knowingly causes another person to reasonably apprehend imminent bodily injury. Tex. Civ. Prac. & Rem. Code § 22.01(a)(2). A civil battery occurs when a person intentionally or knowingly causes bodily injury to another, or intentionally or knowingly causes physical contact with another that a reasonable person would regard as offensive or provocative. Id. § 22.01(a)(1), (3). A peace officer's use of force is privileged only to the extent that it is reasonably necessary to effectuate a lawful arrest or prevent escape. Tex. Penal Code § 9.51(a). Force that exceeds that necessity — or that is applied in the course of an unlawful arrest — is not privileged and constitutes assault and battery under Texas law.

***Assault:***

91. When Deputy Bolin approached Plaintiff's open car door, he did so in an aggressive and escalating manner that placed Plaintiff in reasonable apprehension of imminent bodily injury. Without prior warning, command, or any indication of what was about

to occur, Bolin suddenly and without announcement reached into the vehicle and made physical contact with Plaintiff's person. At the moment Bolin seized Plaintiff's hand — before Plaintiff could respond or comply with any instruction — Plaintiff was placed in reasonable and immediate apprehension that further harmful bodily contact was imminent. This constitutes civil assault.

***Battery – First Contact:***

92. Bolin intentionally and without consent seized Plaintiff's hand or wrist as Plaintiff sat in his vehicle with the door open. Plaintiff had complied with Bolin's instruction to open the door; he had not consented to physical contact with his person. The seizure of Plaintiff's hand was harmful, offensive, and entirely without legal justification. At the time this contact occurred, Plaintiff had committed no act of resistance, had made no threatening gesture, and had not attempted to flee. This intentional, harmful, non-consensual contact constitutes battery.

***Battery – Second Contact:***

93. Immediately following the seizure of Plaintiff's hand, Bolin grabbed Plaintiff's head and, using Plaintiff's head as a handle, forcibly yanked Plaintiff from the vehicle and onto the pavement. Grabbing a person by the head and violently pulling them from a vehicle is inherently harmful, capable of causing cervical injury, head trauma, and significant pain. The contact was intentional, without Plaintiff's consent, and without any lawful basis. Plaintiff had not resisted, had not threatened anyone, and was in the process of complying with Bolin's instructions when this

force was applied. This intentional, harmful, non-consensual contact constitutes battery.

***No Legal Justification:***

94. Deputy Bolin's use of force was not justified under Texas Penal Code § 9.51 or any other provision of Texas law. Section 9.51 permits an officer to use force reasonably necessary to effectuate an arrest — but only a lawful arrest. The arrest of Plaintiff was unlawful, as established in Counts I and V above. Force applied in the course of an unlawful arrest cannot be privileged under § 9.51. Moreover, even assuming arguendo the arrest had been lawful, the force applied here was not reasonably necessary: Plaintiff had offered no resistance, had made no threatening movements, had verbally declared his non-resistance, and was in the process of opening his door as instructed. Violent extraction by the head is not a reasonable or proportionate response to a cooperative, non-resisting suspect.

95. As a direct and proximate result of Bolin's assault and battery, Plaintiff suffered: (a) physical injury from the forcible extraction, including pain, physical impact, and bodily distress; (b) pain and suffering at the time of the assault and thereafter; (c) emotional trauma and psychological distress arising from the sudden and violent nature of the contact; (d) symptoms consistent with Post-Traumatic Stress Disorder, including persistent anxiety, hypervigilance, and fear of law enforcement contact; and (e) all other damages proven at trial. Plaintiff seeks compensatory damages and all other relief available under Texas law.

**COUNT VII – 42 U.S.C. § 1983: Deliberate Indifference in Hiring – Independent Federal Claim**

*(Against Defendant Constable Garcia in his Official Capacity)*

96. Plaintiff realleges and incorporates all foregoing paragraphs.

97. This count is brought under 42 U.S.C. § 1983 and is not a state law negligent hiring claim. Texas governmental immunity bars state law negligent hiring claims against constables in their official capacities, and Plaintiff expressly does not assert any state law hiring claim against any governmental defendant.

98. A policymaker's decision to hire a known dangerous officer can itself constitute an actionable § 1983 violation when the policymaker had actual or constructive knowledge of the officer's propensity to engage in the specific type of constitutional violation that injured the plaintiff and hired him anyway in deliberate indifference to the rights of persons he would encounter. *Brown v. Bryan Cty.*, 219 F.3d 450, 461 (5th Cir. 2000). This "single incident" *Monell* theory is viable where the connection between the hiring decision and the specific constitutional violation is direct and obvious from the face of the hiring record. *Id.*

99. The record in this case presents as direct and obvious a connection as is possible: Bolin's HCSO personnel file contained sustained IAD findings for the exact conduct that injured Plaintiff — fabricating a traffic stop justification, forcibly removing a cooperative driver from a vehicle, and filing criminal charges without probable cause. Constable Garcia hired Bolin within days of that termination. Less than six months later, Bolin subjected Plaintiff Taylor to the same sequence of

unconstitutional acts. The causal link between the hiring decision and the constitutional injury could not be more direct.

100. Constable Garcia's decision to hire Bolin without performing the mandatory § 1701.451 pre-employment review — or to hire him despite reviewing that record — constitutes a single policymaker decision that was the moving force behind Plaintiff's constitutional injuries, giving rise to *Monell* liability under *Brown v. Bryan County*. The factual record supporting this count is set forth in detail in Count IV above and is incorporated herein by reference.

101. As a direct and proximate result of Constable Garcia's deliberate indifference in hiring, Plaintiff suffered all damages described herein and seeks all relief available under 42 U.S.C. § 1983 including compensatory damages, injunctive relief, and attorney's fees under § 1988.

## VI. INJUNCTIVE RELIEF

102. Plaintiff realleges all foregoing paragraphs. Plaintiff seeks prospective injunctive relief against Constable Garcia in his official capacity, including but not limited to: (a) an order requiring Constable Precinct 2 to implement and certify compliance with the mandatory pre-employment screening procedures of Texas Occupations Code § 1701.451 for all future peace officer hires; (b) an order requiring Constable Precinct 2 to obtain and review the complete TCOLE employment history, any IAD investigative records, and employment termination reports for all future hires; and

(c) such other prospective relief as may be necessary to prevent future violations of the constitutional rights of Harris County residents.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Julian Taylor respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts;

B. Award Plaintiff compensatory damages for physical injury, emotional distress, loss of liberty, loss of time, and all other cognizable harms in an amount to be determined by the jury;

C. Award Plaintiff punitive damages against Defendant Bolin in his individual capacity in an amount sufficient to punish and deter similar conduct;

D. Issue prospective injunctive relief against Constable Garcia in his official capacity as described in Count V above;

E. Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute;

F. Award Plaintiff pre- and post-judgment interest as allowed by law; and

G. Grant such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
***Vincent Civil Rights – a Division of Vincent Law, PLLC***
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**